UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

FILED
JUN 2 5 2019
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

DERRICK COBB,

    Plaintiff,

v.

    No. 1:19-cv-61-SNLJ

TRACY MADLOCK, et al.,

    Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Derrick Cobb, a prisoner, for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $27.89. *See* 28 U.S.C. § 1915(b)(1). Additionally, as fully explained below, the Court will partially dismiss the complaint, and direct the Clerk of Court to issue process upon defendants Donna Wigfall, Omar Clark, and Cindy Griffith on plaintiff's claims that are premised upon the denial of due process.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. §

1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $108.41, and an average monthly balance of $139.45. The Court will therefore assess an initial partial filing fee of $27.89, which is twenty percent of plaintiff's average monthly balance.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within

2

the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against four defendants, all of whom are employed by the Missouri Department of Corrections ("MDOC"): Tracy Madlock (a corrections officer and the mailroom supervisor), Donna Wigfall (Function Unit Manager), Omar Clark (Warden or Assistant Warden), and Cindy Griffith (Deputy Division Director of Adult Institutions). He sues the defendants in their official and individual capacities.

The events giving rise to plaintiff's claims occurred when he was incarcerated at the Southeast Correctional Center ("SECC"). They concern a single occasion in June of 2018 when mail sent to him by the St. Louis City Circuit Court was rejected, and he was not notified. Plaintiff alleges this violated his right of access to the courts, and his right to due process.

Plaintiff begins by providing what he calls a "Brief Summary of the Case," in which he writes:

> In this complaint, Plaintiff alleges that the Circuit Court for the City of St. Louis, Missouri, mailed sent him a letter or legal documents possibly relating to the Rule 29.15 post-conviction motion he mailed to the court in June 2018. However, prison staff working in SECC mailroom did not deliver the legal letter or legal documents to Plaintiff. Nor, did the prison staff notify Plaintiff that some incoming legal mail had arrived for him and was being rejected. Instead, the SECC mailroom staff returned the incoming legal documents to the court because it did not comply with prison regulation i.e., (plaintiff's DOC Number was not on the envelope).

(Docket No. 1 at 3, 5).

3

Next, plaintiff alleges:

> As a result thereof, not only was Plaintiff prevented from pursuing his entire post-conviction proceedings, he was:
>
> 1. Not notified of the denial of his post-conviction motion; and
>
> 2. His 10 day window to file a notice of appeal had expired.
>
> All of this occurred because the SECC mailroom staff stated they were unable to deliver Plaintiff's mail. Thus, violating Plaintiff's right to due process, access to the court as guaranteed and protected by the First, Fifth and Fourteenth Amendment under the United States Constitution.

*Id.* at 5.

Plaintiff then provides what he titles "Plaintiff's Statement of Claim." Condensed and summarized, he alleges as follows. On June 20, 2018 in the St. Louis City Circuit Court, plaintiff filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Plaintiff identifies this case using case number 1822-CC10596, and he attaches to the complaint a copy of the docket sheet from the state court post-conviction case *Derrick Cobb v. State of Missouri*, No. 1822-CC10596 (22nd Jud. Cir. 2018).[1] On August 12, 2018, after not receiving a letter from the Circuit Court acknowledging receipt of his motion, he sent a letter to the clerk requesting a copy of the docket sheet. He received it three days later. It reflected a July 9, 2018 docket entry stating that mail the Circuit Court sent to plaintiff had been returned as undeliverable. It also reflected that plaintiff's motion was denied on July 11, 2018. Plaintiff asked his Case Manager to investigate whether he had received any legal mail in June of 2018. Plaintiff states she told him he did not receive any legal mail in June 2018, and that she sent him a copy of the Housing Unit Legal Mail

---

[1] The Court has independently accessed and reviewed the public record of this case published on Missouri Case.net, and takes judicial notice of this public Missouri State Court record. *See Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) (district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records.").

4

Log Sheet reflecting this. In October 2018, plaintiff obtained a copy of the "envelope that was mailed to him from the City of St. Louis Circuit Court establishing that the legal mail or legal documents that was sent to him was received by the Southeast Correctional Center mailroom and was returned to the court." *Id.* at 7.

Plaintiff filed an Informal Resolution Request ("IRR"), Grievance, and Grievance Appeal with respect to the rejection of the mail and the lack of notice. He received written responses from defendants Wigfall, Clark and Griffith, respectively. In the complaint, plaintiff quotes text from those documents. He also attached copies of those documents as exhibits to the complaint. The Court considers those written instruments as part of the complaint for all purposes. *See* Fed. R. Civ. P. 10(c).

In the IRR, plaintiff complained that the SECC mailroom staff rejected the mail and returned it to the Circuit Court without notifying him or providing the court a reason. Among the relief plaintiff sought was a new policy and procedure regarding legal mail, and "prompt notification for rejection of any legal mail." (Docket No. 1 at 7). Wigfall responded by acknowledging plaintiff's complaint about the rejection of his mail and demand for notification of rejection of mail, but denied plaintiff relief, writing: "Mail is processed per policy, IS/SOP 13-1.1 Offender Mail Procedures. There is no indication that staff acted outside the scope of policy in regards to your claim." *Id.* at 8.

Plaintiff then filed an Offender Grievance in which he again requested a "new policy and procedure regarding legal mail" and "prompt notification for rejection of any legal mail." *Id.* Clark responded, but only acknowledged plaintiff's claim that mailroom staff rejected his mail. Clark then wrote that plaintiff's IRR response had adequately addressed the issue. Clark wrote that plaintiff's legal mail did not include his DOC number or housing unit, that "[m]ail is processed

5

per the offender mail procedures guidelines," and that plaintiff had "produced no evidence that staff has acted outside the scope of policy in regards to your claim." *Id.* at 8-9. Plaintiff then filed a Grievance Appeal in which he complained about the rejection of his mail, stated he should have been notified when it was rejected, and asked for the implementation of a new policy and procedure regarding processing legal mail. Griffith responded, writing that the "courtesy grievance response adequately addressed your complaint regarding privileged mail you claim was received in June 2018, and returned to the St. Louis Circuit Court." *Id.* at 10. Griffith then wrote that plaintiff would receive no further response because he filed outside the applicable time frame.

Next, plaintiff alleges that Madlock was the mailroom supervisor, and was responsible for training and supervising mailroom staff. He then states, without factual support, that Madlock was responsible for rejecting the mail and for not notifying him about the rejection, and he states that Madlock failed to cross check his name on the Offender Roster. Plaintiff alleges that because of this, he "was unable to pursue his postconviction proceedings, including the filing of any notice of appeal motion because of Defendant, Tracy Madlock's, actions in not notifying him of the rejection of his incoming legal mail." *Id.* at 11.

Plaintiff also alleges that Wigfall, Clark and Griffith violated his rights by "not ensuring that Plaintiff receives timely notification when his incoming legal mail is rejected and returned to sender," and that Griffith failed to "recommend a new policy and procedure" regarding notifying offenders of rejection of legal mail. *Id.* at 12.

Plaintiff seeks monetary, declaratory, and injunctive relief.

## Discussion

**1.     Access to the Courts**

Plaintiff claims that, by rejecting the mail and not notifying him, the defendants violated his right of access to the courts. To have standing to bring a § 1983 claim premised on the right of access to the courts, a prisoner must have suffered an "actual injury" to a pending case. *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *see also Sabers v. Delano,* 100 F.3d 82, 84 (8th Cir. 1996) (per curiam) (concluding that, because the plaintiff suffered no cognizable injury, she lacked standing to bring an access-to-courts claim). "Actual injury" means "that a nonfrivolous legal claim had been frustrated or was being impeded" by the alleged wrongful conduct. *Lewis*, 518 U.S. at 352–53; *see also Moore v. Plaster*, 266 F.3d 928, 933 (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)). It is insufficient to merely allege that wrongful conduct occurred, even if it is systemic. *Sabers*, 100 F.3d at 84 (citing *Lewis*, 518 U.S. 343). Instead, the plaintiff must plead, and ultimately prove, that the wrongful conduct deprived him of some specific opportunity to defend himself, or advance a nonfrivolous legal claim, in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights. *Id.* Speculation that injury might occur or could have occurred is insufficient. *See Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008) ("[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative").

In the case at bar, plaintiff claims that, because the mail was rejected and he was not notified, he was "prevented from pursuing his entire post-conviction proceedings" and "was unable to pursue his postconviction proceedings, including the filing of any notice of appeal motion." (Docket No. 1 at 5, 11). However, review of plaintiff's post-conviction proceedings belies his allegations. In those proceedings, plaintiff filed his post-conviction motion before the alleged wrongful conduct occurred, and the Circuit Court dismissed it after determining it was untimely.

7

Plaintiff does not explain, nor is it apparent, how that dismissal can be attributed to the rejection of the mail or the lack of notice. Following the dismissal and upon plaintiff's motion, the Missouri Court of Appeals granted him leave to file a late notice of appeal, and counsel subsequently filed a limited entry of appearance on his behalf for the purpose of perfecting an untimely appeal. As of the date of this Memorandum and Order, that appeal remains pending. *See Derrick Cobb v. State of Missouri,* No. ED107344 (E.D. Mo. Ct. App. 2018).

It cannot be said that the rejection of the mail or the lack of notice deprived plaintiff of a specific opportunity to advance a nonfrivolous legal claim, and it certainly cannot be said that plaintiff was unable to file "any notice of appeal motion" or was prevented "from pursuing his entire post-conviction proceedings" as he alleges in his complaint. Instead, plaintiff's allegations amount to speculation that injury could have occurred, which is insufficient. *See Hartsfield,* 511 F.3d at 833. Because plaintiff has not adequately plead an "actual injury," he lacks standing to bring a § 1983 claim premised upon denial of access to the courts. *See Lewis,* 518 U.S. 343, *Sabers,* 100 F.3d 82. Therefore, the Court will dismiss plaintiff's claims that are premised upon the denial of that right.

### 2. Due Process

Next, plaintiff claims that the defendants violated his right to due process by rejecting the mail and not notifying him. In *Procunier v. Martinez,* the Supreme Court held "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." 416 U.S. 396, 417 (1974), overruled on other grounds, *Thornburgh v. Abbott,* 490 U.S. 401 (1989). Therefore, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum

procedural safeguards." *Id.* The Court approved a requirement that an inmate be notified of the rejection, and have a reasonable opportunity to protest the decision. *Id.*; *see also Bonner v. Outlaw*, 552 F.3d 673 (8th Cir. 2009) (citing *Procunier*, 416 U.S. 396).

In the case at bar, plaintiff has not sufficiently alleged Madlock's personal involvement in the rejection of the mail or the lack of notice. Throughout the complaint, plaintiff repeatedly alleges that "mailroom staff" was responsible for the rejection of the mail and the lack of notice. Additionally, in the IRR, Offender Grievance, and Grievance Appeal, he repeatedly identified the SECC "mailroom staff" as responsible. Plaintiff only implicates Madlock after identifying her as the mailroom supervisor, and stating she is responsible for training and supervising the mailroom staff. Plaintiff sets forth no non-conclusory allegations that Madlock was personally involved in the decision to reject the mail and/or not notify him, he does not allege she was personally involved in creating, applying, or interpreting an unconstitutional policy, and he does not allege facts that would state a claim against her for an unconstitutional failure to train or supervise. *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Instead, plaintiff clearly intends to use Madlock's status as the mailroom supervisor to hold her responsible for the actions of the "mailroom staff" he repeatedly alleges was responsible for the rejection of the mail and the lack of notice. However, in a § 1983 action, there is no respondeat superior liability. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). The Court will therefore dismiss Madlock from this action, without prejudice. If during the course of discovery plaintiff obtains facts

9

demonstrating Madlock's personal involvement in the rejection of the mail or the lack of notice, he may refile against her specifically stating those facts.

Plaintiff has sufficiently placed responsibility for the rejection of the mail and the lack of notice on Wigfall, Clark and Griffith. Plaintiff clearly alleges that these defendants personally denied his IRR, Offender Grievance and Grievance Appeal on the basis that his mail was processed in accordance with prison policy, and that they determined plaintiff had produced no evidence that staff acted outside the scope of that policy. The Court recognizes that plaintiff cannot proceed against these defendants based solely upon their administrative or supervisory positions. However, having liberally construed plaintiff's allegations, he is understood to allege that these defendants were personally involved in creating, applying and/or interpreting a policy that was unconstitutional and failed to adhere to the notice requirements of *Procunier*. *See Bonner*, 552 F.3d at 679 (rejecting warden's argument that he had no personal involvement in mailroom operations, noting that the plaintiff may be able to prove warden was personally involved in creating, applying or interpreting a policy that failed to adhere to the notice requirements of *Procunier*); *see also Solomon*, 795 F.3d at 787 (citation omitted) ("if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.")

Plaintiff's individual capacity claims against Wigfall, Clark and Griffith will be allowed to proceed. Additionally, to the extent plaintiff seeks to enjoin a prospective action that would violate federal law, his official-capacity claims against these defendants will be allowed to proceed. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). However, to the extent plaintiff seeks monetary or other relief against these

defendants in their official capacities, such claims would be barred by the Eleventh Amendment. *See id.*

Plaintiff has also filed two motions seeking the appointment of counsel. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). When determining whether to appoint counsel for an indigent litigant, the Court considers factors such as the complexity of the case, the litigant's ability to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. *Id.* After considering these factors, the Court concludes that the appointment of counsel is not warranted at this time. It does not appear that this case is factually or legally complex, nor does it appear that plaintiff will be unable to investigate the facts or clearly present his claims. Finally, the motion is premature, as the defendants have yet to be served with process and discovery has not begun. The Court will therefore deny the motions for the appointment of counsel without prejudice, and will entertain future motions for the appointment of counsel, if appropriate, as this case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for the appointment of counsel (Docket Nos. 3 and 10) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this Memorandum and Order, plaintiff must pay an initial filing fee of $27.89. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1)

his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that defendant Tracy Madlock is **DISMISSED** from this action, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's official and individual-capacity claims against defendants Donna Wigfall, Omar Clark, and Cindy Griffith that are premised upon denial of access to the courts are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants Donna Wigfall, Omar Clark, and Cindy Griffith in their individual and official capacities as to plaintiff's claims that are premised upon the denial of due process.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith.

Dated this 25th day of June, 2019.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE